UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| BRADLEY C. REIFLER, | Case No.: 17-35075 (CGM) |
| Debtor. | |

---------------------------------------------------------x

| | |
|---|---|
| MARIANNE T. O'TOOLE, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF BRADLEY C. REIFLER, | |
| Plaintiff, | |
| – against – | Adv. Pro. No.: 19-9003 (CGM) |
| BRADLEY REIFLER, NANCY REIFLER, LISETTE ACKERBERG and/or John Doe No. 1 and 2, as Trustee of the ACKERBERG IRREVOCABLE TRUST FBO KELSEY REIFLER; BRADLEY REIFLER, NANCY REIFLER, LISETTE ACKERBERG and/or John Doe No. 3 and 4, as Trustee of the ACKERBERG IRREVOCABLE TRUST FBO COLE REIFLER; BRADLEY REIFLER, NANCY REIFLER, LISETTE ACKERBERG and/or John Doe No. 5 and 6, as Trustee of the ACKERBERG IRREVOCABLE TRUST FBO PAIGE REIFLER; BRADLEY REIFLER, NANCY REIFLER and/or John Doe No. 7 and 8, as Trustee of the BRADLEY C. REIFLER CHILDREN'S TRUST; BRADLEY REIFLER, NANCY REIFLER and/or John Doe No. 9 and 10, as Trustee of the BRADLEY REIFLER CHILDREN'S TRUST NO. 1; KELCOP LP; KELCOP FAMILY LLC a/k/a KELCOP LLC; NANCY REIFLER, KELSEY REIFLER; COLE REIFLER; EGIAP LLC; POCLEK, LLC; LISETTE ACKERBERG, and JOHN DOES 11-20, | |
| Defendants. | |

---------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S OBJECTION TO
ACKERBERG'S MOTION FOR A PROTECTIVE ORDER**

**TO THE HONORABLE CECELIA G. MORRIS,
CHIEF UNITED STATES BANKRUPTCY JUDGE**

Plaintiff Marianne T. O'Toole, the Chapter 7 Trustee of the estate of Bradley C. Reifler (the "Debtor"), by her counsel, O'Toole + O'Toole, PPLC respectfully objects to Defendant Lisette Ackerberg's motion for a protective seeking to stay her deposition for the next three months due to her alleged medical condition for the reasons set forth in the Declaration of Andrew D. O'Toole, Esq., dated August 17, 2019 (the "O'Toole Declaration") and below.

PRELIMINARY STATEMENT

The timing and sequence of events proves one thing.  Ackerberg has still not complied with the Trustee's written discovery requests, yet she also seeks to delay or avoid being deposed. Over time, the alleged reason for why she could not be deposed has evolved.  The declaration drafted by Ackerberg's counsel and signed off by Dr. Robert Huizenga, the infamous Dr. H, a Hollywood doctor who specializes in weight loss and appeared in the hit series "Biggest Loser," is wholly conclusory.  Other than its conclusion that the deposition should not proceed at this time, the Huizenga Declaration does not identify how or why a deposition would be seriously detrimental to Ms. Ackerberg's health.  Even though Ackerman has now put her medical condition at issue, the Trustee has not been provided any medical records or documentation.  The declaration was artfully drafted by Ackerberg's counsel in such a manner that it not even clear whether Dr. Huizenga is the doctor treating Ackerberg for any of the conditions referenced in the

2

declaration. At a minimum, the Trustee should be provided Ackerberg's medical records and Dr. Huizenga should be deposed or required to testify in this Court.

While depositions may be stressful and Ackerberg is older and suffers from some chronic diseases, the Trustee has already demonstrated her sensitivity and consideration by noticing the deposition for a location close to her home in California. The Trustee is open to working with Ackerberg and accommodating any reasonable request to address any medical concern. For example, The Trustee is amendable to take the deposition in her home or other location if she would prefer. To the extent Ackerberg speaks at a low volume, the Trustee could provide her with a microphone or means to amplify her voice. To the extent her energy level may be an issue, the deposition could be taken time blocks, with appropriate breaks. However, the Trustee is unable to agree to postpone the deposition for three months and risk that Ms. Ackerberg may no longer be available, particularly where there is no certainty that her claimed condition will improve, and there is a chance it could worsen.

Finally, even if the Huizenga Declaration were credited (which it should not be), the answer would not be to postpone the deposition, but rather to proceed as soon as practicable with appropriate modifications to mitigate any difficulty or stress such deposition might cause Ackerberg. The Trustee has a right to prepare for trial and to take the deposition of Ackerberg to question her about the monies she received from Debtor and reasons for the transfers that are the subject of this avoidance and preference action against Debtor and his family members, including his mother (Ackerberg). It is imperative that the Trustee be permitted to take her deposition as soon as practicable so that her testimony can be preserved for and available at trial. Any concerns about the impact on her health may be addressed by counsel working together in a collaborative and professional matter.

3

BACKGROUND

On June 13, 2019, the Trustee served written discovery requests on Ackerberg and issued a notice of deposition for Ackerberg's deposition to be taken in Los Angeles in close proximity to where she resides on August 12, 2019.  (Declaration of Andrew D. O'Toole, dated Aug. 17, 2019 ("O'Toole Decl.") ¶¶ 12-13; **Exhibits 1-3**).  Ackerberg's responses to the Trustee's Discovery Requests were due on or about July 13, 2019, but that date came and went without Ackerberg responding to the Trustee's written discovery requests or seeking an extension of time to do so.  (O'Toole Decl. ¶¶ 15, 17; **Exhibit 4**).

On July 10, 2019, Ackerberg's counsel contacted the Trustee's counsel requesting that the Trustee not proceed with the deposition, but instead consider proceed by written questions.  At that point in time, Ackerberg's counsel indicates that purported reason for the request was that Ackerberg was difficult to hear.  (O'Toole Decl. ¶ 14).  In response, the Trustee requested written documentation to support the claim that Ackerberg could not be deposed because of age, illness or infirmity.  (*Id.*; Declaration of Craig Cepler, dated August 1, 2019 ("Cepler Decl."), **Exhibit B)**.

On July 16, 2019, Ackerberg's counsel requested that the Trustee withdraw the notice of deposition without providing any documentation.  (O'Toole Decl. ¶ 16; Cepler Decl., **Exhibit C**).  On July 19, 2019, the Trustee wrote to Ackerberg's counsel noting that Ackerberg had failed to response to the Trustee's written discovery and requested that Ackerberg promptly cure her failure to do so by July 26, 2019.  (O'Toole Decl. ¶ 17; **Exhibit 4**).  On July 25, 2019, Ackerberg's counsel contacted the Trustee requesting that the Trustee agree to adjourn the previously scheduled pretrial conference scheduled for July 30, 2019.  (O'Toole Decl. ¶ 18).  On July 26, 2019, the Trustee responded that she could not agree to adjourn the conference given

4

Ackerberg had still not produced any response to the then-past due discovery. (*Id.*) On July 29, 2019 at 7:27 pm, Ackerberg provided her written response to the Trustee's document requests and indicated that she would produce documents on July 31, 2019. (O'Toole Decl. ¶ 19; **Exhibit 5**).

On July 30, 2019, the parties appeared in Court for the pretrial conference. (O'Toole Decl. ¶ 20; ECF Doc. No. 15 (Transcript of July 30, 2019 Pre-Trial Conference), at 11-16). At that time, the Trustee apprised the Court of the status of discovery and raised certain deficiencies with the response to the document requests that were produced on the eve of that conference. The Court ordered Ackerberg to produce all documents relating to all trusts within seven (7) days and authorized the Trustee to file a motion to compel if that did not occur. (ECF Doc. No. 15 at 14). During the conference, counsel for Ackerberg's counsel raised the upcoming deposition noticed for August 12, 2019 and his contention that Ackerberg was unable to be deposed. The Court noted that there was no pending motion for a protective order.

Later that evening on July 30, 2019, Ackerberg's counsel provided the Trustee with a declaration counsel had drafted that was signed by Dr. Robert Huizenga, dated July 24, 2019 (the "Huizenga Declaration"). (O'Toole Decl. ¶ 21; Cepler Decl., **Exhibit D**). It is not clear why the Huizenga Declaration is dated July 24, 2019, but was not produced to the Trustee until July 30, 2019. In any event, Ackerberg's counsel demanded that the Trustee let him know by the close of business on August 1, 2019 whether or not the Trustee would consent to adjourn the deposition of Ackerberg. (O'Toole Decl. ¶ 21). On July 31, 2019, the Trustee informed Ackerberg's counsel that the Trustee was unable to proceed with Ackerberg's deposition as scheduled, largely due to the fact that the document production received at that time was partial and incomplete and Ackerberg had still not responded to the Trustee's interrogatories. (O'Toole

5

Decl. ¶ 23; **Exhibit 7**). That same date, Ackerberg produced a limited set of documents (365 pages) most of which had been previously produced by Ackerberg in prior litigation brought by JPMorgan Chase and some other documents Ackerberg had obtained from counsel for Debtor and the other Family Defendants. (O'Toole Decl. ¶ 22, **Exhibit 6**).

Notwithstanding the fact that the Trustee had advised Ackerberg's counsel that she was unable to proceed with the deposition noticed for August 12, 2019, on August 1, 2019, Ackerberg filed the instant motion for a protective order seeking to delay Ackerberg's deposition for three months. On August 2, 2019, Ackerberg finally responded to the Trustee's interrogatories, but notably refused to answer most of them by raising objections, even though the time in which she was required to do so had long passed. (O'Toole Decl. ¶ 24, **Exhibit 8**). On August 14, 2019, Ackerberg produced additional documents, which the Trustee has been reviewing. (O'Toole Decl. ¶ 26, **Exhibit 9**). Nonetheless, Ackerberg has not fully and completely responded to the Trustee's written discovery requests. The Trustee will be preparing and filing a motion to compel and then be prepared to depose Ackerberg.

## ARGUMENT

**I.     Ackerberg Fails to Carry Her Heavy Burden of Demonstrating the Required Good Cause That Would Be Needed to Prevent or Delay Her Deposition**

    **A.     Legal Standard**

Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the discretion to issue protective orders that limit the extent and manner of discovery, in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. 26(c)(1). However, the Court may only issue a protective order "for good cause." *Id.* The party seeking a protective order, here Ackerberg, bears the heavy burden of demonstrating good cause and must identify a specific need for the protection. "Good cause" requires a particular

6

and specific demonstration of fact as opposed from conclusory statements. It is well-recognized that entirely prohibiting the taking of an oral deposition is very unusual. *In re McCorhill Publ'g, Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988) (*citing* 8 Alan A. Right and Arthur R. Miller, *Federal Practice and Procedure* § 2037 (1986 Supp.)). A party seeking to prevent or delay a deposition based on medical grounds must make a "specific and documented factual showing that the deposition will be dangerous to the deponent's health." *Schorr v. Briarwood Estates Ltd. P'ship*, 178 F.R.D. 488, 491 (N.D. Ohio 1998). Conclusory or speculative assertions of injury like those set forth in the Huizenga Declaration are insufficient. *See Campos v. Webb Cnty. Tex.,* 288 F.R.D. 134, 136-37 (S.D. Tex. 2012) (collecting cases); *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984). Moreover, "[i]f harm to a witness from a deposition is of potential concern, but does not rise to level of a clearly defined and serious injury, courts can fashion accommodations to limit the potential harm to the deponent." *Qube Films Ltd. v. Padell*, No. 13-CV-8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015). Accordingly, the Trustee's right to depose Ackerberg and need to prepare for trial clearly outweighs the entirely speculative and conclusory allegation of potential future harm made by Ackerberg.

    **B.    The Huizenga Declaration is Conclusory, Self-Serving and Fails to Demonstrate that Ackerberg's Deposition Should Be Delayed**

The Huizenga deposition raises more questions than it answers.

*First*, even though the Huzienga Declaration indicates that Ackerberg has been a patient since 1994, it is unclear which conditions, if any, Dr. Huizenga actually treats Ackerberg for. Given how the declaration was drafted by Ackerberg's counsel, it is unclear whether Dr. Huizenga treats her for each of the medical conditions set forth in the declaration, which include Parkinson's, anemia, pulmonary fibrosis, renal azotemia felt secondary Waldenstrom's

7

macroglobulinemia (a non-Hodgkin lymphoma) in addition to a mixed connective tissue disorder or he is simply reporting symptoms treated by other doctors. It seems unlikely that Dr. Huizenga is treating Ackerberg for all of these conditions given the range of other activities Dr. Huizenga engages in and it appears his area of expertise is sports medicine and/or weight loss. According to the complaint filed by Dr. Huizenga, he is famously known as "Dr. H," and is a "world renowned health" expert and "one of the most esteemed sports doctors of all time." *Huizenga v. NYP Holdings, Inc.*, No. 17-CV-2113 (LTS), 2019 WL 1620743, *1, ECF No. 104-1 (Proposed Third Amended Complaint filed by Dr. Huizenga, dated Aug. 9, 2019). Dr. Huizenga is the former team physician for the Los Angeles Raiders football team, has been called as a medical expert in multiple high-profile cases, including both the criminal and civil O.J. Simpson trials and has "served as a writer, correspondent, advisor, doctor on numerous TV shows and movies"[1] including championing his aggressive non-surgical approach to obesity for the past 17 years of the hit television series "The Biggest Loser." *See Huizenga v. Gwynn*, 225 F. Supp. 3d 647 (S.D. Mich. 2016). In addition to his television shows and other appearances, Dr. Huizenga "runs The Clinic by Dr. H, a state of art, multi-disciplinary fat loss facility in [s]outhern California." *Id.*

*Second,* the Huizenga Declaration speaks in generality and lacks factual specificity. For example, it indicates that Ackerberg's "daily activities and life remain markedly limited." Huizenga Decl. § 6. It fails to identify what activities are limited and how so. While it avers she needs 24-hour nursing care, it suggests that she visits some doctor each week. But does not indicate that Dr. Huizenga sees her weekly. It is unclear whether the Huzienga Declaration was based on his own records or the records of other doctors from whom Ackerberg receives treatment. Even though it contends that her current medication, includes steroids, and identifies

---

[1] "Dr. Huizenga has consulted on numerous television programs including *Inside the Vault*, a program on Los Angeles television station KTLA, *Thinervention, Shedding for the Wedding, Extreme Makeover*, and *American Gladiators*." *Huizenga,* 225 F. Supp. 3d 647*,* at n.1.

8

potential side effects, it does not indicate that Ackerberg is suffering from those side effects. The Huizenga Declaration avers that her voice is frail and the volume of her voice is low, but does not indicate that she is unintelligible. Dr. Huizenga indicates that he "anticipates" that Ackerberg will be tapered off the steroids over the next two or three months and suggests that her voice and energy level "may improve." However, there is no guaranty that will be the case. The Huizenga Declaration concludes in conclusory fashion that a deposition "would be seriously detrimental to Ms. Ackerberg's health," but fails to indicate why or how so. Accordingly, Ackerberg fails to satisfy the good cause showing required under Rule 26(c) because she has "not pointed to a clearly defined injury that [Ackerberg] would suffer from the taking of [her] deposition in this matter." *Qube Films Ltd. v. Padell*, No. 13-CV-8405 (AJN), 2015 WL 109628, at *3 (S.D.N.Y. Jan. 5, 2015).

Any concerns about Ackerberg's voice or energy level can and should be addressed by counsel working together to agree to where and how the deposition should proceed. The Trustee is willing to take the deposition in her penthouse apartment or a location close to her home. The Trustee is willing to take the deposition in increments with breaks in between to permit her the chance to rest. The Trustee is willing to have her use a microphone. Should she have concern about the nature of the questioning, a special master could be appointed or the parties could arrange it on a day that the Court could be available by telephone to resolve any issues. However, the Trustee is not willing to postpone her deposition indefinitely and potentially lose forever the ability to take her deposition and preserve her testimony for trial.[2]

---

[2] Likewise, the Trustee would not agree to Ackerberg's initial request back on July 10, 2019 that the deposition be conducted through written questions. The Trustee has a right to know Ackerberg's testimony unfiltered by her son (Debtor) or her counsel. "It is improper for an intermediary to interpret questions and help the witness formulate answers." *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 94 (1994).

9

**II.     The Trustee Should Be Entitled to Conduct Discovery As to Ackerberg's Medical Condition, Including the Right to Depose Dr. Huizenga or Examine Him in a Hearing in this Court**

Assuming for the sake of argument that the Huizenga Declaration were not conclusory and based on pure speculation, Ackerberg should be required to produce her medical records from Dr. Huizenga and any other providers now that she has placed her medical condition at issue. In addition, the Trustee should be provided any communications and documents exchanged between Dr. Hunziega and Ackerberg's counsel, including, but not limited to any emails, drafts or earlier versions of the Huizenga Declaration. The Trustee should also have the ability to depose Dr. Hunziega or cross-examine him to ascertain and challenge his conclusions. *See, e.g., In re McCorhill Publ'g Inc.*, 91 B.R. at 224 (debtor's attending physician testified in Bankruptcy Court before Judge Schwartzberg granted protective order); *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 90 (N.D. Tex. 1994) (denying motion to quash after hearing where three experts testified). Given the Trustee's strong interest and right to take discovery, including Ackerberg's deposition, the Trustee should be afforded the ability to obtain written discovery as to Ackerberg's medical condition and treatment, including the information and bases on which Dr. Huizenga relied upon.

**III.    Even If the Huizenga Declaration Were Credited, the Proper Course Would Not Be to Delay Ackerberg's Deposition, But To Proceed With It As Soon as Practicable With Appropriate Accommodations Made**

Finally, even if the Court were to credit the Huizenga Declaration, the proper course would not be to delay the deposition, but rather ensure that Ackerberg's deposition takes place as soon as she has fully complied with the Trustee's written discovery requests so that her testimony can be preserved for purposes of trial.

10

Dr. Huizenga does not indicate with any certainty whether or not her condition will improve, but simply indicates that he anticipates that her condition may improve over the next two or three months and that he can re-evaluate her at that time.  Thus, there is no assurance that she will necessarily be better; and could very well be worse.  Given her advance age (83 years old) and the purported chronic medical conditions she has, the Trustee has every incentive and interest to depose Ackerberg sooner rather than later so that her testimony may be preserved for trial.

The Trustee and this Court share a strong interest having this case progress in an expeditious manner.  Under the current Scheduling Order, discovery is supposed to close on September 15, 2019.   While that date will obviously need to be extended in light of the Ackerberg and the other Family Defendants' failure to fully and completely comply with the Trustee's written discovery requests, Ackerberg's request to delay her deposition for another three months would only further prolong discovery and delay resolution of this case.

## CONCLUSION

For all of these reasons, the Chapter 7 Trustee objects to Ackerberg's motion for a protective order seeking to delay her deposition and respectfully requests that Ackerberg's deposition be as soon as Ackerberg has completely and fully responded to the Chapter 7 Trustee's written discovery requests.

Dated:  August 17, 2019           O'TOOLE + O'TOOLE PLLC
                                  *Counsel to Marianne T. O'Toole,*
                                  *as Chapter 7 Trustee*

                        By:   /s/ Andrew D. O'Toole
                              Andrew D. O'Toole, Esq.
                              22 Valley Road
                              Katonah, NY 10536
                              Tel.  (914) 232-1511
                              Email  aotoole@otoolegroup.com

11

To: *Via Email*

Craig M. Cepler, Esq.
Yankwitt LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Email: craig@yankwitt.com; docketing@yankwitt.com;

*Counsel for Lisette Ackerberg*

Michael D. Siegel, Esq.
Siegel & Siegel, P.C.
One Penn Plaza, Suite 2414
New York, New York 10119
Email: sieglaw@optonline.net

*Attorney for the Family Defendants*