UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

BRADLEY C. REIFLER,

             Debtor.
-------------------------------------------------------------------x
MARIANNE T. O'TOOLE, AS CHAPTER 7
TRUSTEE OF THE ESTATE OF BRADLEY C.
REIFLER,

             Plaintiff,

    v.

BRADLEY REIFLER, NANCY REIFLER,
LISETTE ACKERBERG and/or JOHN DOE NO. 1
and 2 AS TRUSTEE OF THE ACKERBERG
IRREVOCABLE TRUST FBO KELSEY REIFLER;
*et al.*,

             Defendants.
-------------------------------------------------------------------x

Chapter 7

Case No.: 17-35075 (CGM)

Adv. Proc. No.: 19-9003 (CGM)

**LISETTE ACKERBERG'S MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION BY THE CHAPTER 7
TRUSTEE PURSUANT TO RULE 37 OF THE FEDERAL RULES
OF CIVIL PROCEDURE FOR THE ENTRY OF AN ORDER COMPELLING
LISETTE ACKERBERG TO PROPERLY AND FULLY RESPOND TO THE
TRUSTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, FIRST SET OF
INTERROGATORIES, IMPOSING SANCTIONS AND GRANTING RELATED RELIEF
<u>INCLUDING REASONABLE ATTORNEYS' FEES AGAINST LISETTE ACKERBERG</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

   I.  Background ............................................................................................................ 2

   II.  Ackerberg's Finances.......................................................................................... 3

      A.  The Living Trust ............................................................................................ 3

      B.  Ackerberg's Bank and Brokerage Accounts................................................ 5

      C.  The GRAT Trust .......................................................................................... 5

   III. The Instant Adversary Proceeding and Ackerberg's Discovery Requests ........ 5

      A.  Discovery Requests and Responses ............................................................ 6

      B.  Current Posture ............................................................................................ 8

ARGUMENT ......................................................................................................................... 9

   I.  Legal Standard on Motion to Compel.................................................................. 9

   II.  The Court Should Deny the Trustee's Motion to Compel Because the Trustee Has Failed
      to Establish that the Documents She Seeks Are Discoverable ........................................ 10

      A.  Ackerberg Objections to the Trustee's Discovery
          Requests Have Not Been Waived or Overruled ........................................ 11

      B.  The Trustee Fails to Establish the Documents
          and Information She Seeks Are Discoverable ........................................... 13

         1.  Ackerberg's Trusts..................................................................... 13

         2.  Monthly Bank Statements........................................................... 16

      C.  The Trustee Cannot Show Relevance of Unspecified "Responsive Documents"...... 17

   III. There Is No Basis to Sanction or Warn Ackerberg........................................... 17

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Bowne of New York City, Inc. v. AmBase Corp.*,
  161 F.R.D. 258 (S.D.N.Y. 1995) ............................................. 18

*Boyd v. Petralis*,
  2019 WL 1103852 (W.D.N.Y. Mar. 8, 2019).............................. 11

*Buffalo Carpenters Pension Fund v. CKG Ceiling & Partition Co.*,
  192 F.R.D. 95 (W.D.N.Y. 2000).............................................. 18-19

*Cervantes v. Cervantes*,
  2014 WL 2666780 (Cal. Ct. App. June 13, 2014) ....................... 15

*Cimini v. Jaspan Schlesinger Hoffman, LLP*,
  2008 WL 11412194 (E.D.N.Y. Feb. 22, 2008)............................ 14

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*,
  240 F.R.D. 78 (S.D.N.Y. 2006) ............................... 9, 18, 20

*Compton v. W. Volusia Hosp. Auth.*,
  727 So. 2d 379 (Fla. Dist. Ct. App. 1999) ............................... 14-15

*CSL Silicones Inc. v. Midsun Grp. Inc.*,
  2016 WL 3568173 (D. Conn. June 27, 2016)............................. 19

*Evans v. Calise*,
  1994 WL 185696 (S.D.N.Y. May 12, 1994) ............................... 9

*Gesualdi v. Interstate Payroll Co., Inc.*,
  2016 WL 737909 (E.D.N.Y. Feb. 22, 2016)................................ 12

*Gropper v. David Ellis Real Estate, L.P.*,
  2014 WL 518234 (S.D.N.Y. Feb. 10, 2014)............................. 11, 14

*Hughes v. LaSalle Bank, N.A.*,
  2004 WL 414828 (S.D.N.Y. Mar. 4, 2004) ............................... 10

*In re Seung Min Park*,
  2011 WL 1344495 (Bankr. E.D.N.Y. Apr. 8, 2011)..................... 19

*Ippolito v. Goord*,
  2008 WL 2776864 (W.D.N.Y. July 14, 2008)............................. 11

*Klein v. Torrey Point Grp., LLC*,
  979 F. Supp. 2d 417 (S.D.N.Y. 2013)...................................... 18

*Mandell v. The Maxon Co., Inc.*,
  2007 WL 3022552 (S.D.N.Y. Oct. 16, 2007) ............................. 10

*Metal Management Inc. v. Schiavone*,
  514 F. Supp. 2d 227 (D. Conn. 2007)...................................... 17

*O'Garra v. Northwell Health*,
  2018 WL 502656 (E.D.N.Y. Jan. 22, 2018) ........................................................ 9, 10

*Pac. Employers Ins. Co. v. Troy Belting & Supply Co.*,
  2015 WL 1243250 (N.D.N.Y. Mar. 17, 2015) ........................................................ 17

*Paley v. Superior Court In & For Los Angeles Cty.*,
  290 P.2d 617 (Cal. Dist. Ct. App. 1955) .............................................................. 15

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ........................................................................................ 18

*Rozell v. Ross-Holst*,
  2006 WL 163143 (S.D.N.Y. Jan. 20, 2006) .......................................................... 19

*Segan v. Dreyfus Corp.*,
  513 F.2d 695 (2d Cir. 1975) .............................................................................. 10

*Senat v. City of New York*,
  255 F.R.D. 338 (E.D.N.Y. 2009) ....................................................................... 12

*Stabile v. United Recovery Servs., L.P.*,
  2011 WL 6448189 (E.D.N.Y. Dec. 22, 2011) ....................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
  2015 WL 4385724 (S.D.N.Y. July 6, 2015) .......................................................... 11

*Surles v. Air France*,
  2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001) ....................................................... 10

*Vaigasi v. Solow Mgmt. Corp.*,
  2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ........................................................... 9

*Will of Johnson*,
  127 Misc. 2d 1048, 488 N.Y.S.2d 355 (Sur. 1985) ................................................ 14

*Williamson v. Recovery Ltd. P'ship*,
  2016 WL 6211328 (S.D. Ohio Oct. 25, 2016) ....................................................... 14

**Rules**                                                                                                          **Page(s)**

Fed. R. Civ. P. 26 ........................................................................................... *passim*

Fed. R. Civ. P. 34 ............................................................................................ 16, 19

Fed. R. Civ. P. 37(a)(5)(A) ............................................................................ 17, 18, 19

Fed. R. Evid. 401 ............................................................................................ 9, 16

CPLR § 4503(a) ................................................................................................. 14

Defendant Lisette Ackerberg ("Ackerberg") respectfully submits this Memorandum of Law in Opposition to the Motion by the Chapter 7 Trustee (the "Trustee") Pursuant to Rule 37 of the Federal Rules of Civil Procedure for the Entry of an Order Compelling Lisette Ackerberg to Properly and Fully Respond to the Trustee's First Request for Production of Documents, First Set of Interrogatories, Imposing Sanctions and Granting Related Relief including Reasonable Attorneys' Fees against Lisette Ackerberg (the "Motion").

## PRELIMINARY STATEMENT

In this adversary proceeding, the Trustee seeks to recover approximately $1.3 million in loan repayments and interest paid by debtor Bradley Reifler ("Debtor") to Ackerberg between 2011 and 2014 in connection with a series of loans totaling $7 million between 2007 and 2012 from Ackerberg to Debtor.

The Trustee's Motion seeks an order compelling Ackerberg to produce (a) "all responsive documents" to the Trustee's First Request for Production of Documents and the Trustee's First Set of Interrogatories and (b) all trust documents, including amendments, for all trusts for which Ackerberg was the settlor, trustee or beneficiary.  (Motion at 2.)  The Trustee also seeks an order sanctioning Ackerberg for allegedly not producing all responsive documents, as well as an "express[ ] warning [to] Lisette Ackerberg" concerning her refusal to provide certain documents. (*Id.*)

The Trustee's motion papers are filled with myriad misrepresentations and irrelevant asides but, ultimately, her arguments are baseless.  For the reasons set forth below, the Court should ignore the Trustee's rhetorical efforts to sway the Court and deny the Trustee's Motion in its entirety.

1

First, Ackerberg produced her objections and responses to the Trustee's requests in a timely fashion, and the Trustee suffered no prejudice by any delays. Thus, there is no basis to find that Ackerberg waived any of her objections to the Trustee's overbroad discovery requests.

Second, on the merits, Ackerberg has complied with all her discovery obligations and has produced all responsive, discoverable documents and information in her possession. To the extent the Trustee seeks additional materials, they are not relevant under the Federal Rules or are otherwise not discoverable and Ackerberg should not be ordered to produce them.[1]

Third, as Ackerberg has complied with the Federal Rules and the Court's statements concerning discovery, the Trustee's request for sanctions against Ackerberg is meritless and should be denied.

## STATEMENT OF FACTS

### I.    Background

Ackerberg is an 82-year-old woman and Debtor's mother. (Declaration of Lisette Ackerberg ("Ackerberg Decl.") ¶¶ 4-5.) Between 2007 and 2012, Ackerberg loaned Debtor $7 million, which was memorialized by a series of promissory notes and agreements. (Ackerberg Decl. ¶ 6.) Thereafter, between 2011 and 2014, Debtor repaid $1 million in principal to Ackerberg (as well as approximately $300,000 in interest) in a series of 21 payments. (*Id.* ¶ 7.) It is these approximately $1.3 million in payments that the Trustee seeks to recover as fraudulent conveyances.

Ackerberg is the grandmother of defendants Kelsey and Cole Reifler and the mother-in-law of defendant Nancy Reifler. (*Id.* ¶ 9.) Ackerberg is also the grandmother of Paige Reifler, who, upon information and belief, is the sole member of defendant EGIAP LLC. (*Id.* ¶ 9;

---

[1]    To that end, Ackerberg filed a Motion for a Protective Order on September 10, 2019. (*See* Defendant Lisette Ackerberg's Motion for a Protective Order (Doc. No. 27-1) ("Ackerberg Motion").) Ackerberg expressly incorporates by reference her arguments in that motion here.

Declaration of Craig M. Cepler ("Cepler Decl."), Exhibit J, EGIAP LLC's Answers to

Interrogatories No. 8 (identifying Paige Reifler as the sole member of EGIAP LLC).)  With her

late husband, Ackerberg is the grantor of the (a) Ackerberg Irrevocable Trust Agreement f/b/o

Kelsey Eryn Reifler, dated December 7, 1998; (b) Ackerberg Irrevocable Trust Agreement f/b/o

Paige Alyssa Reifler, dated December 7, 1998; and (c) Ackerberg Irrevocable Trust Agreement

f/b/o Cole Austin Reifler, dated December 7, 1998 (collectively, the "Grandchildren Trusts"),

each of which is a defendant in this action.  (*Id.* ¶ 10.)  She is not a trustee of any of those trusts

and, since creating those trusts in 1998, has had no role in their administration or otherwise.  (*Id.*

¶ 11.)

## II.    Ackerberg's Finances

The Trustee alludes several times in her Motion to Ackerberg's wealth.  (*See, e.g.*,

Motion at 3 n.1, 5 & n.5.)  Only Debtor's assets and actions are relevant to the Trustee's claims;

Ackerberg's wealth is completely irrelevant to this Adversary Proceeding.  Thus, only that

portion of Ackerberg's finances that is relevant to this proceeding is discussed here.

### A.  The Living Trust

Ackerberg created the Amended and Restated Lisette Ackerberg Living Trust (the

"Living Trust"), a revocable trust under California law, on September 7, 2010.  (Ackerberg Decl.

¶ 12.)

A living trust is a commonly used document in California as a substitute for a last will

and testament to provide the instructions for the disposition of assets and for other matters upon

the death of an individual.  (Declaration of William Weintraub ("Weintraub Decl.") ¶ 6.)  It

provides a fast and efficient method of distributing a person's assets upon their death because it

allows the trust assets to be administered and distributed to designated beneficiaries privately and

without a court-supervised probate proceeding.  (*Id.*)

3

Unlike a will, a living trust is a dual-purpose document: it both sets forth the instructions for the disposition of property upon the grantor's death and also holds title to the grantor's assets transferred to the trust during the grantor's lifetime.  (*Id.* ¶ 8.)  Because a living trust is revocable, the grantor retains the right to freely add or withdraw assets and amend or revoke the trust during their lifetime.  (*Id.* ¶ 9.)

For practically all purposes, the assets held in a living trust are treated as if they are owned by the grantor.  (*Id.* ¶ 11.)  The living trust does not obtain a separate taxpayer identification number, and it does not file a separate income tax return during the lifetime of the grantor.  (*Id.*)

Upon the death of the grantor, the living trust becomes irrevocable and can no longer be modified.  (*Id.* ¶ 12.)  If all of the deceased grantor's assets have already been transferred to the living trust during the grantor's lifetime, the designated successor trustee of the living trust can immediately and privately carry out the directives of the living trust and administer and distribute the assets held in the living trust without the need for a court-supervised probate proceeding.  (*Id.*)  As a result, there are no public disclosures of the terms of the living trust or the assets of the grantor during the administration of the estate.  (*Id.*)

In contrast, if all of the instructions for the disposition of property were set forth in an individual's will and if title to all of an individual's assets remained in an individual's name, a probate proceeding would be required to transfer title of the deceased individual's assets.  (*Id.* ¶ 13.)  In a probate proceeding, the deceased individual's will is filed with the court, which results in the public disclosure of all of the terms for the disposition of a deceased individual's assets.  (*Id.*)  Similarly, all of the assets of a deceased individual are listed on an inventory filed with the court and therefore results in a disclosure of all of the deceased individual's assets.  (*Id.*)

Pursuant to the Living Trust Agreement, Ackerberg was the sole grantor and, during her lifetime, is the sole trustee and beneficiary. (Ackerberg Decl. ¶ 13.) Because the Living Trust is revocable, Ackerberg retains the right to amend or revoke the Trust at any time. (*Id.* ¶ 14; Weintraub Decl. ¶ 18.) The Living Trust Agreement provides for the distribution of its assets only upon Ackerberg's death; it does not provide for the distribution of any assets to anyone, including Debtor, during Ackerberg's lifetime. (Ackerberg Decl. ¶ 15; Weintraub Decl. ¶ 19.) Ackerberg has maintained the terms of the Living Trust Agreement in the strictest confidence and has not shared its terms with her children, including Debtor. (Ackerberg Decl. ¶ 16.)

### B.  Ackerberg's Bank and Brokerage Accounts

Ackerberg, personally and through the Living Trust, maintains two bank accounts (the "CNB Account" and the "BOFA Account") and 11 brokerage accounts (including ones that have been closed). (Ackerberg Decl. ¶ 17.) The CNB Account is maintained in Ackerberg's name, while the BOFA Account and the brokerage accounts are held in the name of the Living Trust. (*Id.* ¶ 18.) The transfers at issue in this case were made to the BOFA Account, and no transfers were ever made between the brokerage accounts and Debtor or any entity controlled by Debtor. (*Id.* ¶ 19.)

### C.  The GRAT Trust

In 2009, Ackerberg created a grantor retained annuity trust (the "GRAT Trust") in connection with a specific investment. (Ackerberg Decl. ¶ 22.) By its terms, the GRAT Trust closed in 2014. (*Id.* ¶ 23.) Pursuant to its operative agreement, upon its closing, its res was distributed among Debtor, Ackerberg and Ackerberg's daughter. (*Id.* ¶ 24.)

## III.  <u>The Instant Adversary Proceeding and Ackerberg's Discovery Requests</u>

On January 18, 2019, the Trustee commenced the instant adversary proceeding against Ackerberg, Debtor and Debtor's wife and their three children, as well as certain trusts and

corporate entities.  (Cepler Decl. ¶ 4.)  Ackerberg filed her answer on February 28, 2019.  (*Id.* ¶ 5.)

### A.  Discovery Requests and Responses

On June 13, 2019, the Trustee served discovery requests and noticed Ackerberg's deposition.[2]  (*Id.* ¶ 6.)  Among the Trustee's requests were the following:

- Doc. Req. No. 3: All documents referencing or relating to any communications between you or any one acting on your behalf and . . . any of the defendants named in this adversary proceeding and/or any other Person[3] concerning any monies received from or paid to you after January 19, 2011.

- Doc. Req. No. 4: All documents concerning any monies received or paid to you directly or indirectly by Debtor or any of the other defendants after January 19, 2011.

- Doc. Req. No. 7: Any document reflecting, related to or concerning any trusts in which you or any of the other defendants were the settlor, beneficiary, contingent beneficiary and/or trustee or cotrustee, including, but not limited to the trusts named in this adversary proceeding or any other trusts; including, but not limited to, the New Beginnings Trust.

- Doc. Req. No. 10: The monthly statements for your Bank Accounts[4] for the period from January 1, 2011 to date.

- Interrogatory No. 8: Identify the name of any trust and the trustee of any trust that you created or settled, for which you served as trustee or co-trustee or for which you are the beneficiary.

- Interrogatory No. 11: What is the current balance in your Bank Accounts and/or your net worth[?]

(*Id.* ¶ 6 & Exhibits A and B.)

---

[2]    Contrary to the Trustee's suggestion that Ackerberg is somehow interfering with discovery by "prevent[ing] her deposition from taking place" (Motion at 12), the Court stayed Ackerberg's deposition until October 31, 2019, due to Ackerberg's health.  (*See* Order Temporarily Staying Lisette Ackerberg's Deposition, entered August 22, 2019 (Doc. No. 22).)  The Trustee has not sought to reschedule that deposition at this time.

[3]    The Trustee's discovery requests define "person" as "any natural person, corporation, firm, partnership or other legal entity."  (Cepler Decl., Ex. A at 3.)

[4]    The Trustee's discovery requests define "Bank Accounts" as "the bank accounts that you maintained at any financial institution."  (Cepler Decl., Ex. A at 3.)

On July 19, 2019, the Trustee sent a letter to Ackerberg directing that responses to the Trustee's discovery requests be served by July 26, 2019. (Cepler Decl. ¶ 7 & Exhibit C.) In a subsequent telephone call with the Trustee's counsel on July 25, the undersigned requested an additional extension of time until August 2, 2019, to respond to the Trustee's discovery requests. (Cepler Decl. ¶ 8.) After initially responding that the extension of time "may be ok," counsel called back the following day and said the Trustee would not consent to additional time. (*Id.*)[5]

Accordingly, on July 29, 2019, the next business day after the Trustee's refusal to consent to additional time, Ackerberg produced her Responses to Trustee's First Set of Requests for Production of Documents, including specific objections to the Trustee's requests. (Cepler Decl. ¶ 10 & Exhibit D.) In accordance with Fed. R. Civ. P. 26(b)(2)(B), counsel indicated in the cover email that responsive documents would be produced on July 31, 2019. (*Id.* ¶ 11 & Exhibit E.) Later, at the court conference on July 30, 2019, the Court directed Ackerberg to produce responsive documents within "seven days." (*Id.*, Exhibit K at 13:13-14.)

Thereafter, as previously indicated, on July 31, Ackerberg produced 965 pages of documents, including all bank statements for the Living Trust's bank account, as well as a privilege log. (*Id.* ¶ 12 & Exhibits F and G.) At the same time, Ackerberg's counsel produced copies of documents he had received from Debtor's counsel related to the so-called New Beginnings Trust. (*Id.* ¶ 13.) As Ackerberg's counsel advised the Trustee, the New Beginnings documents "were provided by Mr. Siegel and were not in the possession, custody or control of Ms. Ackerberg."[6] (*Id.* ¶ 13 & Ex. F.)

---

[5]    Counsel was surprised by the Trustee's refusal to extend this courtesy because counsel had previously given the Trustee more than fifteen additional days to provide her responses to Ackerberg's discovery requests. (Cepler Decl. ¶ 9.)

[6]    Thus, the Trustee's suggestion that Ackerberg improperly withheld documents related to the New Beginnings Trust (Motion at 4) is misleading and unsupported by the facts. As stated to the Trustee and her counsel, when the Trustee asked about the New Beginnings Trust, the undersigned asked Debtor's counsel by email about this Trust.

On August 2, 2019, Ackerberg served her Responses to Chapter 7 Trustee's First Set of Interrogatories (the "Interrogatory Responses"). (*Id.* ¶ 16 & <u>Exhibit H</u>.) In the cover letter accompanying the Interrogatory Responses, Ackerberg confirmed (a) she has no documents in her possession, custody or control related to the New Beginnings Trust; and (b) as sworn by Ackerberg in the Interrogatory Responses themselves, she is the only grantor, trustee and beneficiary of the Living Trust. (*Id.* ¶ 17 & <u>Exhibit I</u>.)

On August 14, 2019, Ackerberg supplemented her prior document production by producing approximately 2,700 pages of documents related to the GRAT Trust. (*Id.* ¶ 18.) On December 6, 2019, Ackerberg further supplemented her prior document production and produced statements and check registers related to the CNB Account. (*Id.* ¶ 19.)

**B.  Current Posture**

The parties engaged in numerous good faith discussions in August and September 2009 concerning Ackerberg's objections to the Trustee's discovery requests, but were unable to reach an agreement. (*Id.* ¶ 20.) Therefore, on September 10, 2019, Ackerberg filed a motion for a protective order quashing the Trustee's document requests insofar as they sought the Living Trust Agreement and the brokerage accounts maintained by Ackerberg (through the Living Trust) because such documents are not relevant to any party's claims or defenses and, with respect to the brokerage statements, are not proportional to the needs of the case. (*See* Ackerberg Motion.)

On the same day, the Trustee filed the instant Motion for an order (a) compelling Ackerberg to produce "all responsive documents in her custody, possession and control;"

---

Instead of providing an answer, counsel forwarded documents related to this Trust to the undersigned, who then forwarded them to the Trustee with information concerning how he received them. (Cepler Decl. ¶ 14 & Ex. F.) Further, as the New Beginnings documents make clear, Ackerberg has no affiliation with that Trust. (Ackerberg Decl. ¶ 25.)

(b) compelling Ackerberg to produce all trust documents for any trust she settled, served as trustee or is or was a beneficiary; (c) sanctioning Ackerberg for the Trustee having to bring the instant Motion; and (d) warning Ackerberg that her answer may be stricken if she does not produce documents directed by the Court.  (Motion at 2.)

For the reasons set forth below and in Ackerberg's Motion for a Protective Order, the Court should deny the Trustee's motion to compel because Ackerberg has complied with her discovery obligations and there is no basis to award sanctions against her.

## ARGUMENT

### I.    Legal Standard on Motion to Compel

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."[7]  Fed. R. Civ. P. 26(b)(1).  Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Discovery, therefore, is not "boundless."  *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78, 83 (S.D.N.Y. 2006).

The party seeking discovery must demonstrate that the evidence she seeks is relevant and is "more than merely a fishing expedition."  *Evans v. Calise*, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994).  The burden of demonstrating relevance is on the party seeking discovery.

---

[7]    As courts have noted, in an effort to curb over-discovery, the 2015 amendments to Rule 26 changed the scope of discovery from information relevant to "the subject matter involved in the action" to information relevant to the parties "claims and defenses," in addition to requiring the discovery to be "proportional to the needs of the case." *See, e.g., O'Garra v. Northwell Health*, 2018 WL 502656, at *2 (E.D.N.Y. Jan. 22, 2018) (noting that "discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated.").

*Mandell v. The Maxon Co., Inc.*, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). *See also Surles v. Air France*, 2001 WL 1142231, at *2 (S.D.N.Y. Sept. 27, 2001) (refusing to permit discovery where defendant had no factual basis that requests would lead to relevant evidence). Because discovery is not permitted where it relates solely to unpled causes of action or claims, the requesting party's burden requires her to show the discovery relates to claims that have been pled. *See Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975) (precluding discovery into unpled claims as an impermissible "fishing expedition"); *Hughes v. LaSalle Bank, N.A.*, 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004) ("A litigant may not use discovery to determine whether there is a cause of action. The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.").

The requesting party also bears the burden of demonstrating the requested evidence meets the requirements of Fed. R. Civ. P. 26(b)(1) that disclosure is "proportional to the needs of the case[.]" *See O'Garra*, 2018 WL 502656, at *5 ("[I]t remains the [demanding party's] burden to show how the requested records are relevant, material and proportional to the claims made.").

The Trustee has failed to meet her burden of proof here.

## II.    The Court Should Deny the Trustee's Motion to Compel Because the Trustee Has Failed to Establish that the Documents She Seeks Are Discoverable

The Trustee's discovery requests seek documents and information beyond what is permitted under Rule 26 because (a) she seeks discovery of materials that are not relevant to any parties' claims or defenses and (b) she seeks discovery not proportional to the needs of the case. Therefore, because Ackerberg has complied with her discovery obligations, the Court should deny the Trustee's Motion.

### A. Ackerberg Objections to the Trustee's Discovery Requests Have Not Been Waived or Overruled

As an initial matter, the Trustee's argument that Ackerberg has waived her objections to the Trustee's discovery requests (Motion at 9) misconstrues the relevant case law and should be rejected.

Although courts have discretion in determining whether a party's delay in timely responding to discovery requests constitutes a waiver of objections, courts routinely reject waiver where, as here, the delay is brief, the objections have merit, and the moving party is not prejudiced. *See, e.g., Boyd v. Petralis*, 2019 WL 1103852, at *2 (W.D.N.Y. Mar. 8, 2019) (no waiver where objections were three weeks late and no motion to compel was filed); *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014) (excusing six-week delay where objections had merit); *Ippolito v. Goord*, 2008 WL 2776864, at *3 (W.D.N.Y. July 14, 2008) (excusing thirty-day delay where moving party faced no prejudice); *see also State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 4385724, at *1 (S.D.N.Y. July 6, 2015) (holding "blanket forfeiture" of objections would be "unfair" where requests are "facially improper").

Ackerberg's discovery responses were initially due on July 15, 2019, and the Trustee extended that deadline to July 26. (Cepler Decl. ¶ 7 & Ex. C.) Ackerberg produced her responses to the Trustee's document requests on July 29, the first business day after the Trustee's counsel advised the Trustee would not consent to a further extension past July 26 after initially indicating he might agree. (*Id.* ¶ 10.) Ackerberg then served her interrogatory responses on August 2, four days later. Given this short delay, the lack of any prejudice to the Trustee, and

the merits of Ackerberg's objections as set forth below and in the Ackerberg Motion, no waiver is warranted.[8]

The Trustee's contention that the Court overruled Ackerberg's "belated oral" objections (Motion at 6-7) should also be rejected. The Court has done no such thing. As noted above, Ackerberg served her responses and objections to the Trustee's request for documents on July 29, 2019, and indicated she would produce documents by July 31. There was no motion made, pending or argued with respect to Ackerberg at the July 30, 2019 status conference, nor had the Trustee yet had the opportunity to review Ackerberg's document production by then. Rather, the parties were addressing the status of discovery. As the Court noted at the July 30 conference, consistent with Rule 26, Ackerberg was required to produce "anything that is relevant" or bring a motion to quash. (Cepler Decl., Ex. K at 13:13-14:19.) Similarly, at the August 20 status conference, the Court instructed counsel to produce responsive documents or otherwise bring a motion for the Court to decide whether the documents are discoverable. (*Id.*, Exhibit L at 7:9-15; 8:6-7.)

Ackerberg has done precisely that: she has produced responsive, discoverable documents and, on September 10, after discussing the discovery issues with the Trustee in a good faith attempt to reach an agreement, filed the Ackerberg Motion. Therefore, Ackerberg's objections should be given full consideration.

---

[8] The cases cited by the Trustee concerning waiver either do not support the Trustee's argument or are easily distinguishable. *See Gesualdi v. Interstate Payroll Co., Inc.*, 2016 WL 737909, at *2 (E.D.N.Y. Feb. 22, 2016) (declining to "apply the harsh sanction" of waiver despite a delay of more than three months); *Senat v. City of New York*, 255 F.R.D. 338, 339 (E.D.N.Y. 2009) (finding waiver where responses were more than two months late). Finally, the court's finding of a waiver in *Stabile v. United Recovery Servs., L.P.*, 2011 WL 6448189, at *1 (E.D.N.Y. Dec. 22, 2011), appears to be an outlier based on the strict "absolutely firm deadlines" set by the Court in the case.

**B. The Trustee Fails to Establish the Documents
and Information She Seeks Are Discoverable**

Turning to the merits of the Motion, the Court should reject the Trustee's request to compel production of (a) documents concerning trusts for which Ackerberg is grantor, trustee or beneficiary and (b) account statements for Ackerberg's brokerage accounts (*see, e.g.*, Motion at 2, 3) because the Trustee has failed to show that Ackerberg has not produced relevant, non-privileged documents and information that is otherwise discoverable under Fed. R. Civ. P. 26(b)(1).[9]

The Complaint in this adversary proceeding alleges that 21 payments Debtor made to Ackerberg between February 2011 and October 2014 (totaling approximately $1.3 million) constitute property of the estate and are avoidable as fraudulent conveyances or under a theory of unjust enrichment.  (*See* Complaint, First, Fourth, Fifth, Sixth, Seventh, Ninth Claims for Relief & Exhibit A at A-18.)  Ackerberg's principal defenses are that (a) Debtor made the payments to her in repayment of outstanding loans and (b) Ackerberg had no knowledge of any fraudulent intent by Debtor in making the payments.  Ackerberg does not dispute that she, through the Living Trust, received the transfers identified by the Trustee in the Complaint.  (Ackerberg Decl. ¶ 7.)  The Trustee's discovery requests for all trusts and all brokerage statements are objectionable as they are overbroad and seek information that is not discoverable under Fed. R. Civ. P. 26(b)(1) insofar as they are not relevant to the claims and defenses in this action.

1.    Ackerberg's Trusts

In Document Request No. 7, the Trustee seeks "any document" concerning "*any trusts*" which Ackerberg settled, served as trustee or is a beneficiary.  (Motion at 7-8.)  Ackerberg has

---

[9]    The Trustee also seeks one of two documents Ackerberg withheld as privileged.  (Motion at 5-6, 12-13.) Ackerberg has produced this document (Cepler Decl. ¶ 15), and the Trustee's challenge is therefore moot.  The other withheld document is an email between Ackerberg and her counsel and is indisputably privileged.  (*Id.*, Ex. G.)

produced all documents responsive to this request relevant to the transfers at issue, Debtor, and the other defendants in this Adversary Proceeding, withholding only documents that are privileged, not relevant to the instant dispute or not otherwise discoverable.  Thus, she has complied with her discovery obligations with respect to this overbroad request.

First, this request is clearly overbroad insofar as it seeks "any" document related to "any" trust regardless of the purpose or beneficiary of the trust.  *See, e.g.*, *Gropper*, 2014 WL 518234, at *4 (noting that, in general, "a request for 'any and all' documents . . . is inherently overbroad").  Notwithstanding its overbreadth, Ackerberg has produced all documents in her possession related to the Living Trust, the Grandchildren Trusts and the GRAT Trust relevant to the parties' claims and defenses, including all bank statements for the sole account to which Debtor transferred money to Ackerberg.  (Ackerberg Decl. ¶ 26.)  She therefore has complied with her obligation to produce documents responsive to this request.[10]

Second, the Living Trust Agreement itself is privileged.  Numerous courts throughout the country have held that a will of a living person is subject to the attorney-client privilege while that person is alive so long as the privilege has not been waived.  *See Cimini v. Jaspan Schlesinger Hoffman, LLP*, 2008 WL 11412194, at *3-4 (E.D.N.Y. Feb. 22, 2008) ("In New York, the will of a living person is subject to the attorney-client privilege under CPLR § 4503(a)."); *Will of Johnson*, 127 Misc. 2d 1048, 1050, 488 N.Y.S.2d 355, 357 (Sur. 1985) (will is privileged while individual is alive because the will is "ambulatory" and can be amended); *Williamson v. Recovery Ltd. P'ship*, 2016 WL 6211328, at *3 (S.D. Ohio Oct. 25, 2016) (trust agreement is privileged because it had not been disclosed to a third party); *Compton v. W.*

---

[10]    Given Ackerberg's production, the Trustee's contention that Ackerberg has refused to produce "any documents as to the Lisette Ackerberg Revocable Living Trust" (Motion at 4) is simply untrue and should be rejected.  As noted above, Ackerberg has produced all the bank statements for the bank account maintained by the Living Trust.  Rather, the Trustee seeks to compel production of the trust agreement itself, and numerous monthly brokerage statements.  (*See* Motion at 4, 5, 9.)

*Volusia Hosp. Auth.*, 727 So. 2d 379, 381 (Fla. Dist. Ct. App. 1999) (will of living person is privileged because it raises privacy concerns and can be changed); *see also Paley v. Superior Court In & For Los Angeles Cty.*, 290 P.2d 617, 621 (Cal. Dist. Ct. App. 1955) (communications between client and attorney concerning will are privileged).  As the Living Trust is the "functional equivalent of a will," *Cervantes v. Cervantes*, 2014 WL 2666780, at *1 (Cal. Ct. App. June 13, 2014); (Weintraub Decl. ¶ 6), and has not been disclosed to any third parties in its entirety (Ackerberg Decl. ¶ 16), the Living Trust Agreement itself is privileged and confidential, and the Court should not order its production to the Trustee.

Third, Ackerberg's sworn Declaration submitted in support of her motion for a protective order (*see* Doc. No. 27-2 at ¶¶ 10-11) provides sufficient information to establish Debtor has no interest in the Living Trust.  (Ackerberg Decl. ¶¶ 13-15; *see also* Ackerberg Motion at 8-10 (any interest Debtor may have in the Living Trust is not relevant to his bankruptcy estate).)  Stated simply, Ackerberg is not the debtor, and the Living Trust Agreement is not relevant to Debtor's bankruptcy estate or the issues in this adversary proceeding.

The Trustee suggests the Living Trust Agreement may be relevant because (a) Ackerberg made a significant deposit into the Living Trust bank account in March 2017 (long after the events at issue here) (Motion at 5) and (b) Ackerberg's counsel and Debtor's counsel were in communication concerning a confession of judgment filed in 2014.  (Motion at 5.)  Both of these arguments should be rejected.

With respect to Ackerberg's deposit, the Trustee does not relate it to Debtor in any way. Rather, the Trustee alleges that publicly available information shows that Ackerberg sold her home in early 2017 and the Living Trust's bank statements (which have been produced) show that the money was received from "American Title Insurance" and identifies "Seller Procceds

[sic] Paciffic [sic] Coast Hwy Malibu." (Motion at 3 n.1, 5; Declaration of Andrew D. O'Toole ¶ 23.) The following month Ackerberg transferred $13.5 million from the BOFA Account to other accounts, again without any reference to Debtor. (*Id.*) Thus, the Trustee's request for these documents is yet another example of the Trustee's impermissible fishing expedition into the Living Trust Agreement.

With respect to the communications between Ackerberg's and Debtor's counsel in 2014, Ackerberg has produced all documents in her possession concerning these communications. (Ackerberg Decl. ¶ 27.) Documents related to the creation of the Living Trust would not make any fact at issue related to the alleged fraudulent transfers "more or less probable." Fed. R. Evid. 401.

Fourth, with respect to the Grandchildren Trusts, the GRAT Trust and the so-called "New Beginnings Trust," Ackerberg has produced all documents in her possession related to those trusts, and the Trustee has not produced any evidence to suggest otherwise. Therefore, she cannot be compelled to produce any additional documents. *See* Fed. R. Civ. P. 34(a)(1) (party is only obligated to produce documents in her "possession, custody, or control").

    2.   Monthly Bank Statements

Document Request No. 10 seeks "the monthly statements" for Ackerberg's bank accounts. Again, as stated in Ackerberg's objections, this request is overly broad and seeks non-discoverable documents. Notwithstanding these objections, Ackerberg produced all available statements for the BOFA Account for the period January 1, 2011, through December 29, 2017, and for the CNB Account for the period January 5, 2012, through December 5, 2017, as well as the electronic check register for the CNB Account for all checks and deposits between January 1, 2011, and December 26, 2017. (Ackerberg Decl. ¶ 20.) In total, this production covered all the

16

transactions at issue in this adversary proceeding.  (Ackerberg Decl. ¶ 26.)  With respect to the

brokerage accounts, these statements are maintained in paper form – so gathering them is very

expensive – and do not include any transactions with Debtor.  (*Id.* ¶ 21; Ackerberg Motion at 8,

10-11.)  As these documents would not show transactions with Debtor, the only possible

relevance to the Trustee for these statements is for collection matters, which is not a basis for

pre-judgment disclosure.  *See Pac. Employers Ins. Co. v. Troy Belting & Supply Co.*, 2015 WL

1243250, at *3 (N.D.N.Y. Mar. 17, 2015) ("It is a generally recognized proposition of federal

discovery law that a litigant is prohibited from discovery of an opponent[']s assets until a

judgment against the opponent has been rendered.").

### C.  The Trustee Cannot Show Relevance of Unspecified "Responsive Documents"

Finally, given that Ackerberg has responded to the Trustee's discovery requests, and

produced thousands of pages of documents, the Trustee's motion to compel Ackerberg to

produce "all responsive documents" to the Trustee's discovery requests without further

specification should be denied as the Trustee has failed to demonstrate their relevance or

discoverability.[11]

### III.  <u>There Is No Basis to Sanction or Warn Ackerberg</u>

The Trustee's motion, pursuant to Fed. R. Civ. P. 37(a)(5)(A), for the costs she allegedly

incurred "in connection with her attempts to secure Ackerberg's compliance with her discovery

obligations," including preparing the instant motion (Motion at 13), should similarly be rejected

---

[11]  For example, Interrogatory No. 11 asks for the "current balance in [Ackerberg's] Bank Accounts and/or [her] net worth."  Courts have routinely held that information about a defendant's financial position and net worth is outside the bounds of discovery.  *See Pac. Employers Ins. Co.*, 2015 WL 1243250, at *3; *Metal Management Inc. v. Schiavone*, 514 F. Supp. 2d 227, 239-40 (D. Conn. 2007) (denying discovery where plaintiffs failed to show defendant's current financial condition or net worth bears any relation to plaintiffs' application for relief). Therefore, the Trustee is not entitled to this information and the Court should not compel Ackerberg to produce it.

because (a) for the reasons set forth above, the motion to compel should be denied, and

(b) Ackerberg has not violated any Court order and so sanctions are not warranted.

Fed. R. Civ. P. 37(a)(5)(A) provides that a court may award attorneys' fees to the moving

party if a motion to compel is granted, except that fees shall not be awarded if: "(ii) the opposing

party's nondisclosure, response, or objection was substantially justified; or (iii) other

circumstances make an award of expenses unjust."  Whether a party was substantially justified in

resisting discovery is determined by "an objective standard of reasonableness and does not

require that the party have acted in good faith."  *Bowne of New York City, Inc. v. AmBase Corp.,*

161 F.R.D. 258, 262 (S.D.N.Y. 1995) (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).

Instead, conduct is substantially justified if there was a "genuine dispute" or if "reasonable

people could differ" as to the appropriateness of the contested action.  *See, e.g., Comprehensive*

*Habilitation,* 240 F.R.D. at 87 (denying sanctions motion where opposing party raised valid

relevancy objections to document requests).  A responding party's refusal to produce documents

because they are not relevant provides substantial justification to deny sanctions.  *Klein v. Torrey*

*Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013).

Here, any award of sanctions would be unjust because, as set forth above, Ackerberg's

responses to the Trustee's discovery requests were substantially justified: her objections to the

requests were proper and she produced relevant responsive documents, and sought a protective

order with respect to the Living Trust Agreement and the monthly brokerage statements.  (*See*

Section II, *supra.*)

In addition, sanctions pursuant to Fed. R. Civ. P. 37(b) are not appropriate because,

contrary to the Trustee's contention (*see* Motion at 12), the Court has not entered any discovery

orders with respect to Ackerberg.  *See Buffalo Carpenters Pension Fund v. CKG Ceiling &*

*Partition Co.*, 192 F.R.D. 95, 98 (W.D.N.Y. 2000) (refusing to strike answer pursuant to Fed. R.

Civ. P. 37(b)(2) where the court had not yet entered an order of compliance) (cited by Trustee

at 8).[12]

First, the Trustee has not made any discovery motions prior to the instant Motion that

would serve as the basis for a Court order.  (*See, e.g.*, Local Civil Rule 7007-1 (setting forth

requirements for a discovery motion).)

Second, at the two conferences in this matter, the Court restated a party's obligations with

respect to discovery consistent with the Federal Rules: to either produce documents or bring a

motion.  (*See* Cepler Decl., Ex. K at 14:18-21; Ex L at 7:9-15.)  *See also* Fed. R. Civ.

P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and

related activities will be permitted as requested *or* state with specificity the grounds for objecting

to the request, including the reasons.") (emphasis added).  Ackerberg did just that.  Contrary to

the Trustee's suggestion, the Court could not have ordered Ackerberg to produce non-relevant

discovery because she has no obligation to do so.  *See Rozell v. Ross-Holst*, 2006 WL 163143, at

*3 (S.D.N.Y. Jan. 20, 2006) (refusing to direct production of non-relevant documents); *CSL

Silicones Inc. v. Midsun Grp. Inc.*, 2016 WL 3568173, at *1 (D. Conn. June 27, 2016) ("[A]

party need not produce material that is not 'relevant to any party's claim or defense.'") (quoting

Fed. R. Civ. P. 26(b)(1)).

Accordingly, there is no basis for the Court to enter sanctions against Ackerberg, either in

the form of an award of the Trustee's attorneys' fees or a "warning" to Ackerberg about the

---

[12]    The Trustee's reliance on Fed. R. Civ. P. 37(d)(1)(A)(i) (*see* Motion at 8) makes little sense as there is no claim that Ackerberg failed to appear at her deposition as required by that Rule.  Similarly, the Trustee's citation to cases providing for entry of default (*see* Motion at 10) is misplaced as only Fed. R. Civ. P. 37(b) permits that sanction and such relief is not available here because the Court has not entered any order to produce documents.  *See, e.g.*, *In re Seung Min Park*, 2011 WL 1344495, at *6 (Bankr. E.D.N.Y. Apr. 8, 2011) (striking answer pursuant to Fed. R. Civ. P. 37(b)(2) where there was a first formal order to compel production).

ramifications of her refusal to produce non-discoverable documents. *See Comprehensive Habilitation*, 240 F.R.D. at 87 (denying sanctions where there was "some justification" for the party's "resistance" to provide discovery, even if some arguments were "frivolous").

## **CONCLUSION**

For the foregoing reasons, the Trustee's Motion to Compel should be denied in its entirety.

Dated: December 10, 2019
White Plains, New York

YANKWITT LLP

By: _____
Russell M. Yankwitt
Craig M. Cepler
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.: (914) 686-1500
Fax: (914) 487-5000
russell@yankwitt.com
craig@yankwitt.com
*Attorneys for Defendant*
*Lisette Ackerberg*