UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:

BRADLEY C. REIFLER,

                Debtor.

-----------------------------------------------------------------x

MARIANNE T. O'TOOLE, AS CHAPTER 7
TRUSTEE OF THE ESTATE OF BRADLEY C.
REIFLER,

                Plaintiff,

     v.

BRADLEY REIFLER, NANCY REIFLER,
LISETTE ACKERBERG and/or JOHN DOE NO. 1
and 2 AS TRUSTEE OF THE ACKERBERG
IRREVOCABLE TRUST FBO KELSEY REIFLER;
*et al.*,

                Defendants.

-----------------------------------------------------------------x

Chapter 7

Case No.: 17-35075 (CGM)

Adv. Proc. No.: 19-9003 (CGM)

## DEFENDANT LISETTE ACKERBERG'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR A PROTECTIVE ORDER

In her opening brief,[1] Ackerberg demonstrated the Court should enter a protective order, pursuant to Fed. R. Civ. P. 26(c) and Fed. R. Bankr. P. 7026, quashing document requests served by the Trustee insofar as they seek the Living Trust Agreement and monthly statements for brokerage accounts maintained by Ackerberg because (1) this discovery is not relevant to any party's claims or defenses in this matter, (2) the production of the brokerage statements is not proportional to the needs of the case, and (3) the Living Trust Agreement is privileged and confidential.

---

[1] All terms used herein shall have the meanings ascribed to them in Ackerberg's motion papers ("Ackerberg. Br.").

The Trustee's opposition reiterates the arguments she made in her Motion Pursuant to Rule 37 of the Federal Rules of Civil Procedure for the Entry of an Order Compelling Lisette Ackerberg to Properly and Fully Respond to the Trustee's First Request for Production of Documents, First Set of Interrogatories, Imposing Sanctions and Granting Related Relief including Reasonable Attorneys' Fees against Lisette Ackerberg (Doc. No. 26-1) ("Trustee's MTC"). Like her arguments therein, the Trustee's opposition papers here fail to demonstrate how the Living Trust Agreement and the brokerage statements are discoverable.

Instead, trying to avoid the merits of Ackerberg's arguments, the Trustee misinterprets the Court's statements and relies on distinguishable case law to suggest Ackerberg has waived her discovery objections. As demonstrated below and in Ackerberg's opposition to the Trustee's MTC, the Trustee's arguments should be rejected because Ackerberg timely filed this motion and any delay was minimal and does not justify a waiver. (*See* Point I, *infra*, and Ackerberg's Opposition to the Trustee's MTC.)[2]

With respect to the merits, the Trustee's opposition should be rejected because she (a) relies on outdated standards of relevance for discovery purposes (*see* Point II.A, *infra*); (b) fails to show that the documents are relevant to the claims and defenses in this action (*see* Point II.B, *infra*); and (c) fails to establish that production of Ackerberg's brokerage statements is proportional to the needs of the case. (*See* Point II.C, *infra*). Accordingly, the Court should grant Ackerberg's motion for a protective order in its entirety.

---

[2] Insofar as Ackerberg has addressed the Trustee's arguments in her opposition to the Trustee's MTC, Ackerberg incorporates by reference her opposition thereto, filed on December 10, 2019 (Doc. No. 50 at 11-12) ("MTC Opp.").

**ARGUMENT**

**I.    ACKERBERG HAS NOT WAIVED ANY DISCOVERY
OBJECTIONS AND HER MOTION IS TIMELY**

The Trustee's arguments that Ackerberg's motion is untimely because the Court overruled Ackerberg's objections to the Trustee's discovery requests and because Ackerberg allegedly waived any objections to the Trustee's overbroad discovery requests should be rejected for the reasons set forth in Ackerberg's opposition to the Trustee's MTC, which are specifically incorporated herein. (*See* MTC Opp. at 11-12.) In addition, the new cases cited by the Trustee in her opposition (*see* Trustee's Objection to Ackerberg's Motion for a Protective Order ("Trustee Br.") at 12-13) are distinguishable.

In short, as set forth in Ackerberg's opposition to the Trustee's MTC, Ackerberg's responses to the Trustee's documents requests were produced on July 29, 2019, the first business day after the Trustee's counsel advised the Trustee would not consent to a further extension past July 26 after initially indicating he might agree, and served her interrogatory responses on August 2, four days later. (*See* MTC Opp. at 11-12.) As set forth in Ackerberg's opposition, this minimal delay did not prejudice the Trustee and does not warrant a waiver. (*See* MTC Opp. at 11-12 and cases cited therein.) Moreover, rather than overruling any objections, the Court directed Ackerberg to either produce documents or bring a motion, which is precisely what she has done. (*See* MTC Opp. at 12.) Therefore, there should be no finding of a waiver.

In her opposition brief, the Trustee cites five cases concerning the Court's authority to waive discovery objections where responses are served late. The Trustee previously cited three of these cases in her Motion to Compel (*see* Trustee's MTC at 9-10), and Ackerberg addressed them in her response thereto. (MTC Opp. at 12 n.8.) The two additional cases cited by the Trustee in her opposition here are similarly distinguishable. *See Melendez v. Greiner*, 2003 WL

3

22434101, at *2 (S.D.N.Y. Oct. 23, 2003) (rejecting waiver despite responses being served four months late); *Techsearch Servs., Inc. v. Gorman*, 1999 WL 33024, at *1–2 (S.D.N.Y. Jan. 21, 1999) (finding waiver only when party served responses three months late). Therefore, these cases fail to rebut Ackerberg's arguments that the Court should not find any waiver where all responses were served within a week of the deadline. (*See* MTC Opp. at 11-12).

The Trustee also argues Ackerberg's motion for a protective order is untimely and was filed "in response" to the Trustee's MTC. These arguments are simply preposterous. At the status conference on August 20, 2019, the Court instructed Ackerberg either to produce all responsive documents *or* to bring a motion. The instant motion was timely filed so that it could heard at the next conference, which had been scheduled for September 17, 2019. (*See* Minute Entry, dated September 17, 2019 (Doc. No. 31).)[3]

## II. THE TRUSTEE'S ARGUMENTS ON THE MERITS DEMONSTRATE SHE IS ENGAGED IN AN IMPERMISSIBLE FISHING EXPEDITION

On the merits, the Trustee argues the Living Trust Agreement and brokerage statements are discoverable because (a) there is a "possibility" they may be relevant; (b) she "is entitled to review" the Living Trust Agreement; and (c) Ackerberg cannot show an undue burden. The Trustee's arguments should be rejected because her requests are outside the permissible bounds of discovery under the current version of Rule 26.

### A. The Trustee's Argument Fails Under the 2015 Amendments to Rule 26

The Trustee's argument that the requested documents should be produced because there is a "possibility" of relevance (Trustee Br. at 14) misstates the governing standards concerning discovery. As set forth in the opposition to the Trustee's MTC and specifically incorporated by

---

[3] The Trustee's claim that Ackerberg's motion was filed only "in response" to the Trustee's MTC (Trustee Br. at 2, 13) is incredible on its face given that Ackerberg's motion consisted of a 12-page brief and three declarations, two of which were executed in California. (*See* Doc. No. 27.) Ackerberg's motion papers were prepared over several days and timely filed once they were finalized.

4

reference herein, under the current version of Rule 26, discovery is limited to "any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added); (MTC Opp. at 9-10.) Further, discovery is limited only to claims that are actually pled. (*See* MTC Opp. at 9-10.) The Court should therefore reject any effort by the Trustee to expand the scope of discovery beyond what is provided for by Rule 26(b)(1).

The Trustee's arguments to the contrary are based on outdated case law. For example, the Trustee cites the Supreme Court's opinion in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), for the proposition that "discovery is neither limited to the issues raised by the pleadings, nor to the merits of a case." Because Rule 26(b)(1) has been amended, *Oppenheimer Fund* is no longer applicable. *See San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 2017 WL 3877731, at *1 (S.D. Cal. Sept. 5, 2017) ("[T]he *Oppenheimer Fund* definition [of relevance], like the version of Rule 26(b)(1) that preceded the 2015 amendments, is now relegated only to historical significance.").

The Trustee's reliance on pre-2015 cases and *Strike 3 Holdings, LLC v. Doe*, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019), is similarly misplaced because these cases misstate the scope of discovery under Rule 26(b)(1), as amended in 2015. (Trustee Br. at 14-15.) For example, the court in *Strike 3 Holdings, LLC v. Doe*, 2019 WL 78987, at *2 (S.D.N.Y. Jan. 2, 2019), cited by the Trustee for the proposition that discovery is permitted where "there is any possibility" that the requested information will be relevant, relies on *MacCartney v. O'Dell*, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018), which itself relies on a 1991 decision in *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). This reliance is misplaced because the 1991 version of Rule 26(b)(1) included language permitting discovery into "any matter that bears

5

on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," *id.* at 1367, that is not present in the current version of Rule 26.

Indeed, the language that underlies the *Strike 3 Holdings* decision was deleted from Rule 26(b)(1) in an effort to narrow discovery. *See Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) ("As a threshold matter, the Court notes that Defendant has mistakenly invoked the 'reasonably calculated to lead to the discovery of admissible evidence' standard of the prior version of Rule 26(b)(1). That Rule was amended last year and this language, long relied on by counsel to seek wide-ranging discovery, has now been eliminated."); *see also Michael Kors, L.L.C. v. Su Yan Ye*, 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019) ("Since the 2015 amendments to the federal rules, the scope of discovery permitted has narrowed.").

Accordingly, under the current version of Rule 26(b)(1), neither the Living Trust Agreement nor the brokerage statements are relevant, and the Court should reject the Trustee's attempt to expand the scope of discovery beyond what is permitted by the current Federal Rules.

### B.     The Trustee's Conclusory Attempts to Demonstrate Relevance Again Fail

The Trustee's contention that she is "entitled to review" the Living Trust Agreement (Trustee Br. at 16) should be rejected because she fails to proffer any theory as to how Ackerberg's contemplated distributions of her assets upon her death relate in any way to the Trustee's claims against her in this Adversary Proceeding.

As set forth in Ackerberg's opening papers and the MTC Opp., the Living Trust Agreement is akin to a will and provides no information relevant to the transfers at issue in this Adversary Proceeding or to any property in which Debtor may have an interest prior to his

6

mother's death.[4] (*See* Ackerberg Br. at 8-10; MTC Opp. at 13-16.) The Trustee's reliance on speculation and supposition in an attempt to establish relevance should therefore be rejected.

For example, to support her claim that the Living Trust Agreement is relevant, the Trustee cites, among other non-relevant facts, (a) Debtor's discovery deficiencies, (b) Debtor's testimony concerning the Grandchildren Trusts, and (c) the production of documents related to the New Beginnings Trust. None of these arguments is remotely relevant, and the Trustee includes them in an attempt to muddy the issues and disparage Ackerberg. <u>First</u>, the Trustee claims that *Debtor's* "track record of obfuscation, obstruction and affirmative destruction of documents" (Trustee Br. at 4) means she should be able to obtain non-discoverable materials from Ackerberg. Rule 26(b)(1) does not provide for a defendant to face expanded discovery simply because her co-defendant – who is a separate party represented by separate counsel – has not complied with discovery. <u>Second</u>, despite Debtor's testimony that he "think[s]" Ackerberg is a trustee of the three Grandchildren Trusts (*id.*), Ackerberg has produced the agreements for those three trusts which definitively show that only Debtor and her wife are trustees of each trust. <u>Third</u>, the Trustee's reliance on the alleged belated production of documents concerning the New Beginnings Trust, Ackerberg has no knowledge of and no documents related to the New Beginnings Trust. The Trustee's innuendo (*see id.* at 7 (referring to documents "Ackerberg's counsel *purportedly* obtained from counsel for Debtor" (emphasis added), *i.e.* the New Beginnings Trust documents)), notwithstanding counsel's repeated representations that the documents were received from Debtor's counsel, should therefore be rejected.

---

[4] The Trustee also identifies other documents that purportedly evidence Ackerberg's interactions with Debtor and Ackerberg's grandchildren. (*See* Trustee Br. at 5-6.) These documents, however, do nothing to show the relevance of the Living Trust Agreement. Instead they show there are other documents – that Ackerberg has *fully* produced – that are relevant to this action. As Ackerberg has no additional documents related to these entities in her possession, the Court has no basis to enter any order with respect to them. *See Warren v. Westchester Cty. Jail*, 106 F. Supp. 2d 559, 572 (S.D.N.Y. 2000) (denying motion to compel when defendants were not in possession, custody or control of any responsive documents).

The Trustee's rejection of Ackerberg's privacy concerns about producing her Living Trust Agreement (Trustee Br. at 18-19) is inconsistent with the advisory committee's instructions to courts to consider the significance of "the substantive issues, as measured in philosophic, social, or institutional terms" in determining relevance. Fed. R. Civ. P. 26, 2015 advisory committee notes; *see also Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2019 WL 6108220, at *6 (N.D. Ill. Nov. 15, 2019) (in determining relevance, court must look to burden of disclosure on "important social policies"). Courts have repeatedly recognized a living person's privacy interests in her will, and the Trustee cannot simply wave away Ackerberg's concerns. (*See* MTC Opp. at 14-15 (citing cases demonstrating concerns with requiring disclosure of living person's will or trust and addressing privileged nature of living person's will).)[5]

Similarly, the Trustee fails to show how the withheld brokerage statements are relevant to this Adversary Proceeding. These statements do not include any transactions between Ackerberg and any third party, including Debtor, and thus are not relevant under Rule 26(b)(1). (*See* Ackerberg Br. at 8; MTC Opp. at 16-17.)

### C. The Trustee Ignores Rule 26(b)(1)'s Proportionality Requirement

Finally, the Trustee's assertion that production of the brokerage statements would not be unduly burdensome because of Ackerberg's "significant net worth" (Trustee Br. at 17) suffers from two fatal defects: (1) a party's financial resources does not sanction needless discovery and (2) the Trustee's reliance on the burden ignores the complementary proportionality requirement from Rule 26(b)(1).

---

[5] To the extent the Trustee relies on 11 U.S.C. § 107 to reject any claim of confidentiality or privilege, she is again applying the wrong standard. That statute applies to the *filing* of documents, not the *production* of documents and so does not affect Ackerberg's arguments.

With respect to Ackerberg's assets, the Trustee's repeated references to Ackerberg's wealth and the sale of her home are red herrings (*see* Trustee Br. at 5 n.1; Trustee's MTC at 3 n.1, 5 & n.5) because neither her wealth nor the sale of her home is relevant to any claims or defenses and neither allows the Trustee to engage in a campaign of harassment  *See* Fed. R. Civ. P. 26, 2015 advisory committee notes ("So too, consideration of the parties' resources does not . . . justify unlimited discovery requests addressed to a wealthy party.  The 1983 Committee Note cautioned that '[t]he court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.'"); (MTC Opp. at 15-16 (establishing the deposits related to the sale of Ackerberg's home are not relevant).)  The fact that Ackerberg may be wealthy and have a staff does not mandate she be required to expend significant money to marshal documents that are otherwise not relevant.  (*See* Ackerberg Br. at 10-11 & n.5.)[6]

The Trustee's burden argument reads out of Rule 26(b)(1) the requirement that the burden must be "proportional to the needs of the case."  *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  As set forth in Ackerberg's opening papers, there is no benefit of the brokerage statements because they will not show any

---

[6]  The Trustee's needless smearing of non-party Jamie Williams and her employer Hellie Hoffer & Company is simply offensive. (Trustee Br. at 11; Declaration of Andrew D. O'Toole at ¶ 33.)  The Trustee's reference to a lawsuit against Williams and Hellie Hoffer, as well as citation to a hearsay article from *People* magazine about that lawsuit, serves no purpose here and can only be designed to disparage Williams.  The Court should not condone the Trustee's conduct with respect to a non-party.

9

transactions with Debtor. (*See* Ackerberg Br. at 8, 11.) Therefore, the burden is disproportional to the needs of the case, and the Court should not require Ackerberg to produce them.[7]

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Ackerberg's moving papers and in her opposition to the Trustee's Motion to Compel, the Court should enter a protective order quashing the Trustee's requests for the Living Trust Agreement and the monthly statements for brokerage accounts maintained by Ackerberg.

Dated:  December 13, 2019
        White Plains, New York

                                        YANKWITT LLP

                                By:     _____
                                        Russell M. Yankwitt
                                        Craig M. Cepler
                                        140 Grand Street, Suite 705
                                        White Plains, New York 10601
                                        Tel.: (914) 686-1500
                                        Fax: (914) 487-5000
                                        russell@yankwitt.com
                                        craig@yankwitt.com
                                        *Attorneys for Defendant*
                                        *Lisette Ackerberg*

---

[7] The Trustee's reliance on counsel's conversations about the timing to produce the brokerage statements is misplaced. The undersigned told the Trustee's counsel that if Ackerberg was going to produce the brokerage statements, she would do so within approximately two weeks. Due to the burden, however, instead of producing them, Ackerberg brought this motion as directed by the Court.

Finally, the Trustee's insistence of the production of the brokerage statements despite repeated sworn assurances that these documents contain no relevant information, as well as the Trustee's belated reference to Williams' monthly reports to Ackerberg (Trustee Br. at 17), suggests she is demanding these documents only to obtain information about Ackerberg's assets, an impermissible purpose at this time. *See Pac. Employers Ins. Co. v. Troy Belting & Supply Co.*, 2015 WL 1243250, at *3 (N.D.N.Y. Mar. 17, 2015) ("It is a generally recognized proposition of federal discovery law that a litigant is prohibited from discovery of an opponent[']s assets until a judgment against the opponent has been rendered.").

10